IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-483-KS

| | | |
|---|---|---|
| JEREMIAH M. CROTTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Jeremiah Crotts ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's

---

[1] Plaintiff's complaint names Nancy A. Berryhill, in her official capacity as Acting Commissioner of the Social Security Administration, as the defendant to this action. Andrew M. Saul now holds the office of Commissioner and is hereby substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

Motion for Judgment on the Pleadings [DE #24], denies Defendant's Amended Motion for Judgment on the Pleadings [DE #33], and remands the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on December 13, 2016, with an alleged onset date of November 1, 2016. (R. 10, 258–74.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 10, 124–25, 152–53, 201–02.) A hearing was held on January 28, 2018, before Administrative Law Judge ("ALJ") Gary Brockington, who issued an unfavorable ruling on April 19, 2018. (R. 10–36, 47–94.) On August 8, 2018, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On October 12, 2018, Plaintiff filed the instant civil action, seeking judicial review of the final administrative decision pursuant to 42 U.S.C. §§ 405 and 1383(c)(3).

## DISCUSSION

I. **Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v.*

2

*Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the

3

Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

## III. ALJ's Findings

As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act ("the Act") through December 31, 2021. (R. 12.) Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since November 1, 2016, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: "arthralgia/arthritis; trigger finger of the left thumb; bilateral carpal tunnel syndrome; degenerative disc disease of the lumbar spine; sacroiliitis; gastroesophageal reflux disease (GERD); cyclical vomiting; irritable bowel syndrome; functional abdominal pain syndrome; fibromyalgia; obesity; depressive disorder; bipolar disorder; anxiety disorder; panic disorder; attention deficit hyperactivity disorder (ADHD); and trauma and stressor related disorder." (R. 12–13.) The ALJ found Plaintiff's "diverticulosis/diverticulitis, status post sigmoidectomy; duodenitis;

leukocytosis; anemia; hypertension; cannabis abuse; and opioid abuse" not to be severe impairments. (R. 13.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 13.) The ALJ expressly considered listings 1.02, 1.04, 5.06, 12.04, 12.06, 12.11, and 12.15. (R. 13–15.) The ALJ also stated he considered Plaintiff's fibromyalgia in according with SSR 12–2p and Plaintiff's obesity in accordance with paragraphs 1.00Q, 3.00O, and 4.00I1 of the listings, and SSR 02–1p. (R. 14.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform less than the full range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b) and SSR 83-10, with the following limitations: frequently push/pull and operate foot and hand controls with the lower and upper extremities; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasionally balance, stop, kneel, crouch, and crawl; frequently reach, reach overhead, handle objects, and finger bilaterally; occasional exposure to vibration; and occasional exposure to unprotected heights, hazardous machinery or hazardous moving mechanical parts. [Plaintiff]'s work is limited to simple, routine and repetitive tasks, but not at a production rate pace; occasional interaction with the public and co-workers; and frequent interaction with supervisors. [Plaintiff] would be off task no more than 10 percent of the time in an eight-hour workday, in addition to normal breaks (with normal breaks defined as a 10-15 minute morning and afternoon break and a 30-45 minute lunch break).

(R. 15.) In making this assessment, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not supported by the overall evidence of record to the extent they purport to limit him more than

5

that provided for in the residual functional capacity" assessment. (R. 29.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (*Id.*) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, namely: merchandise marker, routing clerk, and housekeeper. (R. 30.) The ALJ concluded that Plaintiff was not disabled under the Act since November 1, 2016, Plaintiff's alleged onset date. (*Id.*)

## IV. Plaintiff's Arguments

Plaintiff contends the Commissioner erred by:

(A) failing to explain why more restrictive attendance limitations were not included in the RFC (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #25] at 10–14); and

(B) insufficiently explaining his reasons for rejecting the opinions of treating medical sources (*id.* at 14–19).

The Commissioner argues that substantial evidence supports the ALJ's decision and that the ALJ properly explained the RFC assessment and the weight assigned to treating and non-treating medical opinions. (Def.'s Mem. Supp. Mot. J. Pldgs. [DE #34] at 6–13.) For the reasons discussed below, the undersigned disagrees with the Commissioner and, therefore, orders remand.

### A. RFC Assessment

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996

6

WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If necessary, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7.

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

"[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion . . . . [M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916

F.3d 307, 311 (4th Cir. 2019) (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)). Simply put, this means an ALJ must "[s]how [his] work." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (applying same principle to an ALJ's listing analysis). Such analysis—"[h]armonizing conflicting evidence and bolstering inconclusive findings," *Patterson*, 846 F.3d at 662—is a "necessary predicate" to determining whether substantial evidence supports the Commissioner's findings, *Monroe*, 826 F.3d at 189 (quoting *Radford*, 734 F.3d at 295). "An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review." *Parker v. Colvin*, No. 4:13-CV-38-FL, 2014 WL 2604282, at *3 (E.D.N.C. June 11, 2014). Where a court is "left to guess about how the ALJ arrived at his conclusions on [a claimant's] ability to perform relevant functions . . . , remand is necessary." *Mascio*, 780 F.3d at 637.

Plaintiff's core complaint is that ALJ Brockington failed to explain his reasons for not imposing more restrictive attendance limitations, despite full awareness of this issue as evidenced by multiple references to work attendance problems in the ALJ's opinion and by testimony at the administrative hearing. (Pl.'s Mem. Supp. Mot. J. Pldgs. at 11–13 (citing R. 14, 18–20, 22–3, 92).) This aspect of the RFC is crucial because the Vocational Expert ("VE") testified that there would be no jobs available for Plaintiff if (i) Plaintiff was restricted to being off-task for fifteen percent of an eight-hour workday (rather than the ten percent assessed in the RFC) or (ii) Plaintiff was absent more than one day per month. (R. 91–2.)

8

It is impossible to know why ALJ Brockington rejected Plaintiff's claim that he has more restrictive attendance limitations because the only reason given is that Plaintiff's statements about his symptoms "are not entirely consistent" with the evidence in the record. (R. 17, 29.) The ALJ does not explain what the inconsistences are. *See Harrison v. Berryhill*, No. 4:16-CV-227-FL(2), 2017 WL 3669630, at *4 (E.D.N.C. Aug. 7, 2017) (identifying similar failure by ALJ Brockington to explain inconsistencies), *mem. & recommendation adopted by* 2017 WL 3669515 (E.D.N.C. Aug. 24, 2017). The ALJ spent numerous pages summarizing treatment notes and then stated his conclusion. This is not sufficient to enable meaningful judicial review, particularly in a case where even the Commissioner acknowledges there is "quite a bit of contradictory evidence in the record." (Def.'s Mem. Supp. Mot. J. Pldgs. at 11); *see Thomas*, 916 F.3d at 311.

On review, the Commissioner offers reasons to support the ALJ's decision. The Commissioner argues that (i) Plaintiff's symptoms were controlled when Plaintiff took his medication as prescribed (Def.'s Mem. Supp. Mot. J. Pldgs. at 8), (ii) Plaintiff's complaints are contradicted by evidence in the record (*id.* at 9 (comparing R. 804 with R. 828 and R. 2056 with R. 1600, 1801, 1926, 2001, 2051, and 2079)), and (iii) Plaintiff exaggerated his complaints of pain to "get opioids to go with his marijuana" (*id.* at 10–11).

There are several problems with the Commissioner's position. First, while these may be good reasons to discount evidence in the record supporting Plaintiff's position, they are the Commissioner's reasons provided on review, not those stated

9

by the ALJ. Thus, they cannot be the basis for affirming the Commissioner's final determination. *See Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) (Commissioner cannot engage in post-hoc rationalization of an ALJ's opinion).

Second, even if these were the ALJ's reasons, the ALJ would still need to reconcile inconsistencies in the record regarding each argument. *See* SSR 96–8p, 1996 WL 374184, at *7. As to Plaintiff's symptoms being controlled when he was taking his medications as prescribed, there is also evidence that Plaintiff was still missing significant time from his job even when he reported that his medications were helping. (R. 19–20 (discussing reports from May through September 2016).)

The Commissioner is correct that there is notable evidence in the record that may support a conclusion Plaintiff was abusing opioids and marijuana, *e.g.*, (R. 1569) (summarizing violation of pain contract). However, ALJ Brockington never identified this as his reason for discounting Plaintiff's statements about his ability to stay on task at work for eight hours each day, five days a week. There is also evidence that medical providers started to reduce Plaintiff's reliance on opioid medications (R. 2099–3000 (January 2018 list of medications and noting prescription history)) and that Plaintiff did engage in non-narcotic treatment modalities such as use of a heating pad (R. 1907) and counseling (R. 2047 (note from Nurse Practitioner McCain that Plaintiff participating in intensive outpatient counseling)). The court cannot sanction the Commissioner's argument without more explicit and detailed explanation from the ALJ.

Third, it is difficult to understand how the ALJ reached the RFC based on the weight he assigned to various medical and non-medical opinions in the record. The weight assigned is as follows:

- Lori Downing, Psy.D., consultative psychological evaluation report from March 2017 based on January 2017 examination, "substantial" weight. (R. 24–25.)

- Lisa Peoples, Physician Assistant, Duke Pain, mental medical source statement from April 2015, "little" weight. (R. 27.)

- Steven Prakken, M.D., Duke Pain, letters from February and September 2017, "little" weight. (R. 27.)

- Karen McCain, Nurse Practitioner, Duke Pain, mental medical source statement from October 2017, "partial" weight, and physical medical source statement from December 2017, "little" weight. (R. 27–28.)

- Dakota Cox, M.D., and Stephen Levin, M.D., state agency medical consultants, opinions from January 2017 and May 2017, respectively, "moderate" weight. (R. 28.)

- Jennifer Fulmer, Ph.D., and Arne Newman, Ph.D., state agency psychological consultants, opinions from March 2017 and May 2017, respectively, "moderate" weight. (R. 28.)

- Julie Harmon, lay third-party functional report from January 2017, "some" weight. (R. 28.)[2]

---

[2] Plaintiff was also treated by a rheumatologist, Robert T. Keenan, M.D., who

There is no explanation regarding the meaning of these descriptions, though. The only opinion to which ALJ Brockington assigned substantial weight is that of psychological consultative examiner Lori Downing, which was necessarily limited to Plaintiff's mental impairments. It appears ALJ Brockington credited Plaintiff's statements about his symptoms to an extent that led the ALJ to assign less weight to the agency medical opinions of Drs. Cox and Levin because of Plaintiff's statements. (R. 28 (assigning moderate weight to the medical consultants' opinions because "the complete record, to include [Plaintiff]'s testimony, supports that [Plaintiff] is more limited").) Lastly, while the ALJ assigned "some" weight to the third-party functional report, the ALJ's opinion only contains general criticisms of that third-party report and never explains what portion of the report he credited. (R. 28.) Based on the descriptions provided by ALJ Brockington, it is impossible to know how he weighed the evidence. *See Monroe*, 826 F.3d at 190–91 (explaining how an ALJ's general and conclusory assignments of weight precluded meaningful review).

The ALJ's lack of explanation and analysis, failure to address and harmonize conflicting evidence in the record, and vague assignments of evidentiary weight combine to frustrate meaningful review.

### B. Treating Medical Sources

Plaintiff also argues the ALJ did not correctly analyze the opinions of particular treating medical sources, namely, those from Duke Pain. (Pl.'s Mem. Supp.

---

noted that he did not think it was "coincidental" that Plaintiff's problems, including the depression, started after his colon resection. (R. 2048–55, 2076–83.)

J. Pldgs. at 18–19.) The Commissioner argues the ALJ gave good reasons for not giving much weight to these opinions and this is understandable because the record indicates that these opinions were mere reflections of Plaintiff's complaints, which were motivated by a desire to obtain drugs. (Def.'s Mem. Supp. Mot. J. Pldgs. at 11–12.) In light of the court's decision to remand for further consideration of the RFC, the court does not address whether ALJ Brockington properly analyzed and explained the weight he assigned to these treating medical sources. Accordingly, the court remands the matter to the Commissioner for further proceedings in accordance with the reasons set forth above.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings [DE #24] is GRANTED, Defendant's Amended Motion for Judgment on the Pleadings [DE #33] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 26th day of May 2020.

_____
KIMBERLY A. SWANK
United States Magistrate Judge